# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CURTIS D. MORGAN

VERSUS

DOW CHEMICAL COMPANY, ET AL.

CIVIL ACTION

NO. 17-269-JWD-UNA

## RULING AND ORDER

This matter comes before the Court on *Plaintiff's Motion to Remand and Request for Attorneys' Fees and Costs* (Doc. 9) filed by Plaintiff Curtis Morgan. Defendants Huntington Ingalls Incorporated (f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.), J. Melton Garrett, Albert L. Bossier, Jr., and Lamorak Insurance Company, in its capacity as alleged insurer of Avondale Industries, Inc., and its alleged executive officers (collectively, "Avondale") oppose the motion. (Doc. 53.) Plaintiff has filed a reply. (Doc. 66.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and the submissions of the parties and is prepared to rule.

This Court joins the majority of other courts considering this issue and finds that Avondale was required to remove this suit, not within thirty days of receipt of the transcript of the Plaintiff's deposition, but rather within thirty days of the deposition itself. Avondale failed to do so. As a result, removal was untimely. The Court will thus grant the Plaintiff's motion in part and remand this suit to state court.

Nevertheless, the Court also finds that Avondale had an objectively reasonable basis for believing that removal was timely. Consequently, Plaintiff's request for costs and expenses will be denied.

## I.     Factual and Procedural Background

### A.  Plaintiff's State Court Action

On February 23, 2017, Plaintiff filed a Petition for Damages in the 18th Judicial District Court for the Parish of Iberville. (Doc. 9-16.)  Plaintiff named Avondale as a defendant, among others. (Doc. 9-16 at 3.)

Plaintiff alleges that "[o]n a daily basis during [his] employment" with Avondale, he "was exposed to dangerously high levels of toxic substances, including asbestos, and asbestos containing products . . . in the normal routine course of his work." (Doc. 9-16 at 4.)  Plaintiff further asserts that, "[a]s a result of these exposures to toxic substances, including asbestos, [he] contracted asbestos-related mesothelioma and other related ill health effects, which were first diagnosed on approximately December 21, 2016." (*Id.*)

Plaintiff is dying, and Plaintiff represents that a hearing for a preferential trial setting was scheduled for April 28, 2017. (*See* Doc. 9-8.)  On the day before the hearing, Avondale filed a notice of removal to this Court. (Doc. 1.)

### B.  Plaintiff's Deposition

Earlier in the case, Plaintiff was deposed for an extended period of time beginning on March 9, 2017. (Docs. 9-11, 1-4.)  Counsel for Avondale began questioning Plaintiff on March 10, 2017, and later continued on March 20, 2017. (Doc. 9-11 at 4, 9.)

Plaintiff stated that he had no reason to disagree that he worked for Avondale from February 28, 1966, to August 9, 1966. (Doc. 9-11 at 9.)  During that time, he worked as a sheet metal helper. (*Id.*)  Plaintiff testified that all his work for Avondale was at Avondale's main yard and on one vessel, a Lykes vessel. (Doc. 9-11 at 10.)  He did not remember any other type of vessel that he worked on other than the one Lykes vessel. (*Id.*)

Avondale's attorney then questioned Plaintiff about his alleged work on the *USS Huntsville*. (*Id.*)  Avondale began its questioning as follows: "Mr. Morgan, I will represent to you, and I'm happy to show them to you, I've got your Avondale records, and during your Avondale employment, it shows that you had six different injuries, minor injuries, working aboard a vessel called the USS HUNTSVILLE." (*Id.*)[1]  Plaintiff specifically testified that he did not remember that vessel. (*Id.* ("Q. Do you remember that vessel at all? A. No. I thought I was just on that one, but maybe not.").)  Plaintiff was then asked about specific injuries he allegedly suffered on the *USS Huntsville*, including dropping hot slag on his shoe and burning his eyes, but none of these incidents reminded him of working on the *USS Huntsville*. (Doc. 9-11 at 11.)  Plaintiff was then asked:

> Q.      So as you sit with us, the only vessel you can recall working on would be the one Lykes vessel?
>
> A.      Yes, sir.
>
> Q.      But if the records indicate that you had those injuries aboard the HUNTSVILLE, you would agree that you worked on the HUNTSVILLE?
>
> A.      Yes, sir.  I just don't remember it.

(*Id.*)

Plaintiff also provided testimony concerning what exactly he did on the Lykes vessel, such as working in the engine spaces and carrying metal sheets across the top of the ship. (*Id.*) He also discussed insulators and others cutting and installing wallboards aboard the Lykes

---

[1] Avondale attaches to its opposition the medical record purporting to show that Plaintiff worked on the *USS Huntsville*. (Doc. 53-1 at 1.)  The document lists a series of nine injuries Plaintiff suffered from March 14, 1966, to June 18, 1966. (*Id.*)  Six of the items include in their description of "Diagnosis" the words "USS Huntsville" or "Huntsville." (*Id.*)  The document is signed on the bottom by Curtis Morgan and is dated February 25, 1966. (*Id.*)

vessel. (Doc. 9-11 at 10–13.)  Plaintiff stated that he was exposed to the dust generated by these other activities on the Lykes vessel. (Doc. 9-11 at 14.)

Counsel for Avondale later returned his questioning to the *USS Huntsville*.  He asked whether, as they discussed Plaintiff's work for Avondale, Plaintiff could remember working aboard that ship. (Doc. 9-11 at 15.)  Plaintiff stated that he could not and that he remembered working on one Lykes vessel. (*Id.*)  Avondale's attorney then asked Plaintiff if he remembered the "total number of ships" he worked on during his employment with Avondale, and Plaintiff replied: "No, sir.  Because it seemed like they were always in the same spot, so I just figured it was the same ship.  I'm trying to place them. I don't know." (*Id.*)  Counsel then asked, "Is it your belief that you worked on more than one ship?", and Plaintiff replied, "I guess.  You said I worked on that other one, so I guess so.  Yes sir." (*Id.*)  Plaintiff was asked later, "And so it's your belief, is it not, that you likewise would have worked around the insulators on the HUNTSVILLE?", and Plaintiff responded, "Yes, sir." (Doc. 9-11 at 16.)

Avondale received a link to the deposition transcript on March 28, 2017. (Doc. 1-5.) Avondale then removed the case on April 27, 2017—thirty days after receiving the transcript and thirty-eight days after Avondale questioned the Plaintiff about his time on the *USS Huntsville*.

## II.    Discussion

### A.  Motion to Remand

#### 1. Removal Standards

"As 'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' " *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365–66 (5th Cir. 1995)). Thus, as a general rule, "[t]he removal statute is . . .  to be strictly

construed, and any doubt about the propriety of removal must be resolved in favor of remand."

*Gasch*, 491 F.3d at 281–82 (citing *Carpenter*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200

F.3d 335, 339 (5th Cir. 2000)); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d

720, 723 (5th Cir. 2002) (citing *Acuna*, 200 F.3d at 339) ("Any ambiguities are construed against

removal because the removal statute should be strictly construed in favor of remand.").

However, in this case, Avondale has removed under the federal officer removal statute,

28 U.S.C. § 1442. This "statute speaks in broad language allowing the removal of any state case

commenced against[,]" among others, the following:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

*Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461 (5th Cir.), *reh'g denied, reh'g en banc*

*denied*, 824 F.3d 468 (5th Cir.), *cert. denied*, 137 S. Ct. 339, 196 L. Ed. 2d 262 (2016) (quoting

28 U.S.C. § 1442(a)(1)). Unlike the general rules governing removal, the following guidelines

govern the interpretation of the federal officer removal statute and the review of cases removed

under it:

> Orders remanding a case to state court are generally not reviewable. *See* 28 U.S.C. § 1447(d). The statute governing removal procedure provides for only two exceptions: remand orders involving certain civil rights cases, 28 U.S.C. § 1443, and remand orders involving the federal officer removal statute, 28 U.S.C. § 1442. *See* 28 U.S.C. § 1447(d).

> Our unusual ability to review a remand order in this context reflects the importance Congress placed on providing federal jurisdiction for claims asserted against federal officers and parties acting pursuant to the orders of a federal officer. *See* *Watson v. Philip Morris Cos.,* 551 U.S. 142, 147, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007); *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 398 (5th Cir. 1998) (both noting that the Supreme Court has long required "liberal" construction of the statute). The reasons for federal jurisdiction in cases against federal officers and their agents borrow from the rationales for both diversity and federal question

jurisdiction. *See Watson,* 551 U.S. at 150, 127 S. Ct. 2301 (describing the purposes of federal officers' right to remove cases to federal court). As with diversity jurisdiction, there is a historic concern about state court bias. *See id.* ("State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials." (quoting *Maryland v. Soper (No. 1),* 270 U.S. 9, 32, 46 S. Ct. 185, 70 L. Ed. 449 (1926))); *Willingham v. Morgan,* 395 U.S. 402, 405, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969) ("Obviously, the removal provision was an attempt to protect federal officers from interference by hostile state courts."). As with federal question jurisdiction, there is a desire to have the federal courts decide the federal issues that often arise in cases involving federal officers. *See Watson,* 551 U.S. at 150, 127 S. Ct. 2301 (emphasizing the importance of "federal officials [having] a federal forum in which to assert federal immunity defenses"); *see also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 3726 (4th ed. 2015) (noting that one of the statute's "basic purposes" is to ensure federal officers have a "federal forum in which to assert federal immunity defenses"). . . .

Before reviewing the district court's finding . . . , we note another manifestation of the statute's "liberal construction" that impacts our analysis. Although the principle of limited federal court jurisdiction ordinarily compels us to resolve any doubts about removal in favor of remand, *see Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000), courts have not applied that tiebreaker when it comes to the federal officer removal statute in light of its broad reach, *see Watson,* 551 U.S. at 147, 127 S. Ct. 2301 (emphasizing the statute's "broad language"). We thus review the district court's decision *de novo,* without a thumb on the remand side of the scale. *See Winters,* 149 F.3d at 398 ("[The] right [of removal] is not to be frustrated by a grudgingly narrow interpretation of the removal statute."); *see also Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006) ("We take from [the statute's] history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."); *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.,* 484 F.3d 380, 390 (6th Cir. 2007) (the same) (citing *Durham* ).

*Id.* at 460–62 (footnote omitted).

Nevertheless, "such 'broad language [of § 1442] is not limitless,' even in a statute that

should be afforded a 'liberal construction[.]' " *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551

U.S. at 147, 127 S. Ct. at 2304–05).[2]  Further, "when faced with a motion to remand, it is the

---

[2] As the Fifth Circuit has explained, "the Supreme Court has articulated limits based on the statute's 'language, context, history, and purposes.' " *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551 U.S. at 147, 127 S. Ct. at 2305). "The result is a three-part inquiry for determining whether federal officer removal is proper that aims to ensure that removal occurs when there is a 'federal interest in the matter.' " *Savoie*, 817 F.3d at 461 (quoting *Winters*, 149 F.3d at 398).  Because the Court bases its decision on the timeliness of removal, it need not decide whether these substantive requirements of § 1442 have been met.

defendant's burden to establish the existence of federal jurisdiction over the controversy," even when the defendant bases removal on § 1442. *Winters*, 149 F.3d at 397 (citations omitted).

## 2. Removal Procedures Generally

The procedure for removal is set forth in 28 U.S.C. § 1446, and this statute also prescribes the time limits for removal. Section 1446 provides in relevant part:

> . . . [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). "[W]here the timeliness of a federal officer's removal is at issue, we extend section 1442's liberal interpretation to section 1446." *Durham*, 445 F.3d at 1253 (holding "that a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal").

"A discovery response may constitute an 'other paper' under the federal removal statute, notifying defendant of an action's removability and triggering the 30–day removability period." *Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992)). "To qualify as an 'other paper', however, the discovery response must be 'unequivocally clear and certain', so that defendant may ascertain the action's removability." *Id.* (citing *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)). Thus, in *Robinson v. Kmart Corp.*, No. 11-12, 2011 WL 2790192 (M.D. La. Apr. 28, 2011), *report and recommendation adopted*, No. 11-12, 2011 WL 2937952 (M.D. La. July 14, 2011), this Court found that "defendant timely removed this matter within thirty days of receipt of plaintiffs'

responses to interrogatories and requests for production of documents[,]" including medical records. *Id.*, 2011 WL 2790192, at *4. Similarly, in *Shields v. Washington National Insurance Co.*, 375 F. Supp. 2d 1346 (M.D. Ala. 2005), the "court again conclude[d] that a deposition can, and in this case does, constitute 'other paper' so that the second removal is timely." *Id.* at 1349.

### 3. "Other Paper" as Depositions—Live Testimony v. Transcript

#### a. The Issue and Summary of Holding

The central issue before the Court is the proper interpretation of the phrase "within thirty days after receipt by the defendant of . . . other paper." 28 U.S.C. § 1446(b)(3). Avondale removed the case within thirty days of receiving the transcript of Plaintiff's deposition but more than thirty days from the date of the deposition itself. Thus, the key question is whether the above phrase includes only receipt of a transcript or whether it can also include receipt of information heard orally at the deposition.

This question turns in part on *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996). Avondale argues that this case definitively holds that the 30-day period is triggered when the defendant receives the deposition transcript. Conversely, the Plaintiff argues that *S.W.S. Erectors* never addressed the central issue here.

In short, the Court agrees with the Plaintiff. Section 1446(b)(3) is ambiguous, and *S.W.S Erectors* did not address the issue currently before the Court. Left without controlling authority, the Court must decide what authority is most persuasive.

Cases within this circuit are split on the issue. Nevertheless, the Court finds more persuasive those cases holding that the 30-day removal period commences to run from the date of the deposition, not the date the transcript is received.

This conclusion is bolstered by the majority of courts considering this question, including the Tenth, Third, Ninth, and Sixth Circuits.[3]  The Tenth Circuit has directly addressed this issue and has taken the position advanced by the Plaintiff here.  The other specified circuits (and numerous district courts) strongly support the conclusion that the 30-day removal period begins on the date the deposition was taken.

Considering all of these cases, the Court finds that Avondale was required to remove within thirty days of the Plaintiff's deposition.  Avondale failed to do so.  Consequently, the Court finds that removal was untimely and that this suit should be remanded to state court.

### b.  Fifth Circuit Case Law—*S.W.S. Erector* and Beyond

*S.W.S. Erectors* is central to the arguments of both parties.  As a result, the Court believes an extensive discussion of this case is appropriate.

In *S.W.S. Erectors*, Infax, Inc., was hired as prime contractor to build and install certain signs at an airport in Houston. *Id.*, 72 F.3d at 491.  Infax subcontracted some of its work to Triangle and Service, which in turn subcontracted Southwest Sign. *Id.*  Southwest performed the work, but it did not obtain approval from Triangle. *Id.*  Infax promised to pay Southwest if Triangle did not pay, but the specifics of that promise were disputed. *Id.*

Southwest substantially performed the work, but Triangle refused to pay.  *Id.*  Southwest eventually sued Triangle and received a take-nothing judgment. *Id.*  Southwest then attempted to get payment from Infax, and, when Infax refused, Southwest filed suit in state court on November 30, 1992. *S.W.S. Erectors*, 72 F.3d at 491.

In its complaint, Southwest did not specify an amount of damages. *Id.*  Infax's attorney "learned during a telephone conference with Southwest's attorney that Southwest's damages

---

[3] *See* discussion, *infra.*

exceeded $100,000," so he drafted an affidavit confirming the amount in controversy. *Id.* On December 31, 1992, Infax attempted to remove the action based on diversity jurisdiction. *Id.* The case was remanded on the grounds that it had been removed to the wrong division. *Id.*

Infax later deposed Southwest's president, and, on April 28, 1993, Infax received a copy of the deposition transcript. *Id.* The president testified that the damages were between $70,000 and $80,000. *Id.* at 491–92. On May 3, 1993, Infax again removed the case to federal court, now arguing that the deposition transcript was an "other paper" that made the case removable. *Id.* at 492.

Southwest moved to remand the case claiming, among other things, that "it was not possible to determine whether the amount in controversy exceeded $50,000 despite the deposition testimony of its president." *Id.* The district court denied the motion to remand and later granted summary judgment against Southwest. *Id.*

The Fifth Circuit affirmed both rulings. After finding that Infax was not barred from removing the case "more than once on the same ground," *id.*, the appellate court addressed the timeliness of the removal. *Id.* at 494. Southwest contended that removal was untimely because it was more than thirty days from the drafting of the affidavit, which Southwest claimed was the relevant "other paper." *Id.* Infax responded that "subjective knowledge of the defendant, as in its attorney's affidavit, cannot start accrual of the 30-day removal period." *Id.* The Fifth Circuit found as follows: "We agree with Infax. . . . The Fifth Circuit has indicated that the 'other paper' conversion requires a *voluntary act by the plaintiff*. . . . Further, this Court has held that the defendant's subjective knowledge cannot convert a case into a removable action." *Id.* (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)). The appellate court then concluded:

> We find that an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one. We hold that the affidavit, created entirely by the defendant, is not "other paper" under section 1446(b) and cannot start the accrual of the 30–day period for removing. On the other hand, a transcript of the deposition testimony is "other paper." Therefore, we conclude that Infax's second removal petition, which was based on the deposition transcript, was timely.

*Id.*

Having carefully considered the *S.W.S. Erectors* opinion, the Court concludes that the decision does not raise or discuss the specific question presented to this Court. Though the Fifth Circuit found that a deposition transcript could constitute "other paper," the appellate court never specifically resolved the question of whether the 30-day period is triggered by the Plaintiff giving live-testimony at a deposition or only by the date the transcript is provided to the Defendant. This distinction is particularly important here, as Plaintiff is dying and was seeking an expedited trial date in state court.

Subsequent Fifth Circuit case law does not alter the Court's conclusion. In *Boskey v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002), the Fifth Circuit held that "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." *Id.* at 211. In doing so, the Court explained that this holding did not conflict with earlier case law, including *S.W.S. Erectors*. *Id.* at 212 & n. 22. In a footnote, the *Boskey* court characterized its earlier holding in a parenthetical as follows:

> *See S.W.S. Erectors*, 72 F.3d at 491-92, 494 (holding that time requirements for filing a notice of removal were triggered by the defendant's receipt of a transcript of the plaintiffs' president's deposition in which he testified that the actual damages fell between $70,000 and $80,000, when the minimum amount in controversy for diversity jurisdiction was $50,000)[.]

*Id.* at 212 n. 22.

Like *S.W.S. Erectors* itself, *Boskey* does not definitively resolve the issue before this Court. *Boskey* does not characterize *S.W.S. Erectors* as holding that the 30-day period is *only* triggered by receipt of a deposition; rather, the case simply held that a deposition transcript *can* trigger the period, and it did so in that case.

Furthermore, in the more recent case of *Ameen v. Merck & Co.*, 226 F. App'x 363 (5th Cir. 2007), the Fifth Circuit found that defendants' removal was timely because "they did remove within 30 days following [plaintiff's] deposition." *Id.* at 368. The Fifth Circuit specifically noted that the plaintiff "was deposed on August 7, 2003" and that the defendants "removed on September 8, 2003." *Id.* at 368 n. 11. The Fifth Circuit concluded:

> A deposition may "constitute[ ] a new paper or event that changed the facts regarding the removableness of the case." [*S.W.S. Erectors*, 72 F.3d at 494.] [Defendants'] contention that [plaintiff] had no basis for recovery against the individual defendants relies on facts first revealed in her deposition testimony. Accordingly, removal was timely, as [defendants] removed within 30 days of becoming aware that the case might be removable.

*Id.* at 368.

The Court finds *Ameen* instructive here. The Fifth Circuit clearly stated that removal runs from the date of plaintiff's deposition. *Id.* at 368–69. While the time period listed is in fact thirty-two days rather than thirty, without any indication of when the transcript was made available, there is, at the very least, ambiguity as to whether the transcript controls.[4]

For all these reasons, the Court rejects Avondale's argument and finds that *S.W.S. Erectors* does not provide a binding rule for this Court to follow in deciding this motion. Case law after *S.W.S. Erectors* confirms that the issue before the Court is unresolved in the Fifth Circuit. As a result, the Court will turn to other authority.

---

[4] The ambiguity is all the more difficult to reconcile because "the district court denied [the plaintiff's] motion [to remand] without explanation." *Ameen*, 226 F. App'x at 367; *see also Ameen v. Merck & Co.*, No. 03-03587, slip op. at 1 (S.D. Tex. Jan. 16, 2004).

### c. District Court Cases from the Fifth Circuit

Both parties point to authority within the Fifth Circuit to support their position.  Having reviewed these cases, the Court finds that there is a split on whether the 30-day removal deadline begins on the date of the deposition or the day the transcript is received.  However, the Court finds the former line of cases more persuasive.

*Henderson v. J.C. Penny Corp.*, No. 12-691, 2013 WL 4039407 (M.D. La. Aug. 7, 2013), is the only authority from this Court, and it supports the Plaintiff's position.  In *Henderson*, Magistrate Judge Bourgeois recommended that a motion to remand be denied. *Id.* at *1.  "The issue before the Court [wa]s whether the requisite amount in controversy [wa]s met and removal was appropriate and timely based upon the receipt of 'other paper' from which it may be ascertained that the case is removable." *Id.* at *1 (citing 28 U.S.C. §§ 1332(a), 1446(b)(3)).  This Court noted that "[n]either party dispute[d] that Defendant removed the action on November 2, 2012, within 30 days of Plaintiff's deposition and within one year of the action's commencement, as required by 28 U.S.C. § 1446(b)(3), (c)." *Id.* at *3 n. 3.

Magistrate Judge Bourgeois ultimately found that "Plaintiff's deposition qualifie[d] as 'other paper' under section 1446(b)(3) and that Defendant ha[d] met its burden of establishing the amount in controversy requirement." *Id.* at *6.  The Court based this conclusion in part on *S.W.S. Erectors*, stating "[a] plaintiff's deposition testimony may constitute 'other paper' under section 1446(b) if it gives rise to new facts warranting removal." *Henderson*, 2013 WL 4039407, at *4 (citing *S.W.S. Erectors*, 72 F.3d at 491–92, 494).  Particularly relevant here, this Court "further [found] that Defendant's removal on November 2, 2012 was timely as it occurred within thirty days of the deposition taken on October 12, 2012." *Id.* at *6.  Thus, though the matter was

undisputed, Magistrate Judge Bourgeois clearly found that removal was proper because it was thirty days from the date plaintiff's deposition was taken, not from the date of the transcript.

*Poole v. Western Gas Resources, Inc.*, No. 97-2929, 1997 WL 722958 (E.D. La. Nov. 18, 1997) also supports the Plaintiff. In *Poole*, the plaintiff argued that a notice of removal was untimely. *Id.* at *1–*2. Defendant contended that the 30-day removal period began on the day it deposed the plaintiffs and that, as a result, removal was timely. *Id.* at *2. The Eastern District relied upon *S.W.S. Erectors* for the proposition that "a deposition *transcript* constitutes 'other paper' for purposes of the removal statute." *Id.* (emphasis in original) (citing *S.W.S. Erectors*, 72 F.3d 489). The *Poole* court then concluded:

> This Court finds no functional difference between a deposition and a transcript of a deposition for purposes of the removal statute. The Court hereby finds that in the instant case defendant['s] . . . Notice of Removal was timely filed, as it was filed within thirty days of [defendant's] discovery of the facts upon which its claim of fraudulent joinder is alleged, that discovery being predicated on the deposition of the plaintiffs.

*Id.*, at *2. Thus, *Poole* also supports the Plaintiff's position, as it found no distinction between the taking of a deposition and a transcript under the removal statute.

Similarly, in *In re Vioxx Products Liability Litigation*, No. MDL 1657, 2005 WL 3542885 (E.D. La. Nov. 23, 2005), a defendant drug manufacturer removed a case claiming that plaintiffs joined defendant doctors improperly and for the purpose of defeating diversity jurisdiction. *Id.* at *1. The manufacturer based this argument on information learned at the deposition of plaintiff's expert doctor, who allegedly "changed his testimony at his deposition and asserted that the Defendant Doctors were not negligent." *Id.* at *2. But the manufacturer waited more than a month after the deposition of plaintiff's expert doctor to remove the case. *Id.* at *5.

The district court granted the plaintiff's motion to remand, explaining that the manufacturer waited more than one year from the commencement of the action in violation of 28 U.S.C. § 1446(b) and that equitable tolling did not apply. *Id.* at *3–*4. Judge Fallon further explained:

> [E]ven if section 1446(b)'s one year time limit was not applicable to this case, [the manufacturer] would have still been required to file its notice of removal within thirty days of [the doctor's] deposition. If a case is not initially removable, as this one was not, a defendant has thirty days to remove the case from the receipt of an amended pleading, motion, order, or other paper that indicates that the case is removable. 28 U.S.C. § 1446(b). A deposition is considered an "other paper." *Poole v. Western Gas Res.,* No. CIV.A.97–2929, 1997 WL 722958, at *2 (E.D. La. Nov. 18, 1997) (finding that there was no functional difference between a deposition and a deposition transcript and, as such, a deposition was considered an "other paper" under the holding of *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996). *Contra Rivers v. Int'l Matex Tank Terminal,* 864 F. Supp. 556, 559 (E.D. La. 1994). Therefore, [the manufacturer] would have been required to remove this case before January 18, 2005 [(i.e., the date of the doctor's deposition)], even if section 1446(b)'s one year time limit did not apply.

*Id.* at *5. Thus, *In re Vioxx* provides the strongest support for the Plaintiff, as it directly found that a removal was untimely because it occurred more than thirty days from the date of a deposition.

Cases cited by Avondale reach the opposite result. For example, in *Nelson v. Wal-Mart Louisiana LLC*, No. 09-302, 2009 WL 3753539 (W.D. La. Nov. 9, 2009), the magistrate judge denied a motion to remand and held, among other things, "that it was not clear that this case was removable until the Plaintiff testified at her deposition" and "that Defendants' receipt of the written transcript of the deposition testimony—not the actual live deposition testimony—triggered the thirty day removal period to run and that Defendants' removed the case timely." *Id.* at *1. The district court affirmed the magistrate judge's decision, finding that it "was neither clearly erroneous nor contrary to law." *Id.* at *2. The district court also agreed that "the

discovery and medical documentation provided by Plaintiff to Defendants after the original petition was filed did not 'clearly and unequivocally' indicate that Plaintiff's claims exceeded the amount in controversy." *Id.* Lastly, the district court relied upon *S.W.S. Erectors* and specifically found that removal was timely because "it was not the deposition testimony itself that triggered the removal time to run but the deposition transcript which can be considered 'other paper' for the purposes of Section 1446(b)." *Id.* (citing *S.W.S. Erectors*, 72 F.3d at 494).

Similarly, in *Loupe v. Pennsylvania General Insurance Co.*, No. 16-6075, 2016 WL 6803531 (E.D. La. Nov. 17, 2016), the Eastern District held that removal by the defendant (who happened to be Avondale) was untimely. *Id.* at *1. In doing so, the *Loupe* court noted that "receipt of the deposition *transcript*, not the taking of the deposition, starts the removal period." *Id.* at *3 n. 20 (emphasis in original) (citing *Nelson*, 2009 WL 3753539, at *2; *S.W.S. Erectors*, 72 F.3d at 494). However, in *Loupe*, the defendants did not contest "that they received a transcript of the deposition more than 30 days before removal[.]" *Id.*

In *Sanchez v. Southwest Texas Equipment Distributors, Inc*., No. 05-1237, 2006 WL 488309 (W.D. Tex. Jan. 27, 2006), the district court denied a motion to remand. *Id.* at *1. There, the plaintiff argued that removal was timely because the 30-day period began to run when the plaintiff "uttered the above testimony" on the day of his deposition. *Id.* at *2. In rejecting this argument, the *Sanchez* court specifically stated, "Under *S.W.S. Erectors*, the receipt of the written deposition transcript, not the oral testimony itself, triggers the running of section 1446(b)'s thirty-day removal period." *Id.* (citing *S.W.S. Erectors*, 72 F.3d at 494; *Delaney v. Viking Freight, Inc*., 41 F. Supp. 2d 672, 677 (E.D. Tex. 1999) (citing *S.W.S. Erectors*)). Thus, the court found removal timely because the defendants removed the case within thirty days of receipt of the deposition transcript. *Sanchez*, 2006 WL 488309, at *2.

Putting these conflicting lines of authority together, the Court finds that, though Avondale has cited to a greater number of cases, the Court is more persuaded by the Plaintiff's position. Avondale's decisions are largely rooted in an incorrect interpretation of *S.W.S. Erectors*.  As discussed extensively above, this Court believes that *S.W.S. Erectors* did not specifically address the question of whether live deposition testimony can also trigger the 30-day deadline.  Thus, the foundation of these cases is questionable, and this Court does not find them persuasive.

Rather, the Court is more persuaded by *Henderson*, *Poole*, and *In re Vioxx*.  As stated in *Poole* and *In re Vioxx*, the Court agrees that there is "no functional difference between a deposition and a transcript of a deposition for purposes of the removal statute."  Moreover, the Court is inclined to follow the approach taken by this Court in *Henderson*.

Based on these authorities, the Court believes that Avondale was required to remove the case within thirty days of the Plaintiff's deposition.  As Avondale failed to do so, removal was untimely.

### d.  Cases from Other Circuits

### i.     The Tenth Circuit

This conclusion is further bolstered by jurisprudence from other circuits.  Several cases have found that the time limit of § 1443(b)(3) begins running from the date the deposition is taken and not from the date the transcript is provided.

The Court finds most persuasive *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072 (10th Cir. 1999).  Because this case is critical to the Court's decision, an extensive discussion is warranted.

In *Huffman*, Marshall Huffman and Virginia Newton "leased space from [defendant] to operate a retail furniture store in a shopping center[.]" *Id.* at 1075. The space's roof leaked for an extended period of time, and the lessor failed to repair it. *Id.* The plaintiffs eventually left the space and filed suit against the lessor in state court claiming breach of contract and rescission. *Id.*

The complaint "requested actual and punitive damages 'in excess of $10,000.'" *Id.* Later, on April 28, 1997, Huffman testified that "plaintiffs were seeking money damages in 'excess of $300,000' for 'ruining' their business and harming his reputation." *Id.* at 1075–76. Huffman said that he had "one supporting document, apparently a set of balance sheets and income statements, . . . but that he did not yet have 'economic research' documents." *Id.* at 1076. Huffman also identified an economist who would be an expert witness on damages. *Id.* The economist's "expert report, produced at his June 3, 1997 deposition, calculated damages at $1,900,000." *Id.*

On June 25, 1997, the lessor removed the suit. *Id.* The lessor claimed that the expert report first provided notice of jurisdiction. *Id.* The plaintiffs moved to remand, arguing that removal was untimely because it was filed more than thirty days from Huffman's deposition. *Id.* The district court found that "proper notice" of the "jurisdictional amount . . . was not given until [d]efendant received [p]laintiff's damage analysis and economic figures on June 3, 1997" and subsequently granted the lessor's motion for summary judgment. *Huffman*, 194 F.3d at 1076.

On appeal, plaintiffs argued, among other things, that removal was untimely. *Id.* Plaintiffs asserted that the lessor failed to timely remove "whether the thirty-day time period [was] measured from service of the initial pleading, under the first paragraph of § 1446(b), or from Mr. Huffman's deposition testimony, under the second paragraph." *Id.* at 1077. The Tenth Circuit rejected the first argument and then turned to the second. *Id.*

The Tenth Circuit stated that it had to "determine at what point [the lessor] received 'a copy of an amended pleading, motion, order or other paper from which it [could] first be ascertained that the case [was] one which [had] become removable.' " *Id.* at 1077–78 (citing 28 U.S.C. § 1446(b)). The appellate court described how "[t]he parties propose different dates for this occurrence. Plaintiffs contend that Mr. Huffman's deposition testimony triggered the running of the thirty-day removal period, and therefore the notice of removal was twenty-eight days late," while the lessor pointed to receipt of the expert report. *Id.* at 1078.

The Tenth Circuit agreed with the plaintiffs and found that removal began to run from the date of the deposition. *Id.* at 1078. In doing so, the appellate court explained:

> To analyze the suitability of plaintiffs' proposed date, we must first determine whether a deposition constitutes an "other paper" within the meaning of § 1446(b). A majority of the federal district courts have not required receipt of an actual written document. Instead, they have held that a discovery deposition does satisfy the requirement. *See, e.g., Effinger v. Philip Morris, Inc.,* 984 F. Supp. 1043, 1047–48 (W.D. Ky. 1997) (collecting cases); *Haber v. Chrysler Corp.,* 958 F. Supp. 321, 326 (E.D. Mich. 1997); *Riggs v. Continental Baking Co.,* 678 F. Supp. 236, 238 (N.D. Cal. 1988); *Smith v. International Harvester,* 621 F. Supp. 1005, 1008 (D. Nev. 1985); *see also* 28 U.S.C.A. § 1446 (Commentary on 1988 Revision) ("The ['other paper'] that reveals the phoniness of the nondiverse defendant's joinder may be, e.g., the deposition of some nonparty witness."); 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3732 at 300–10 (3d ed. 1998) ("The federal courts have given the reference to 'other paper' an embracive construction. . . . Various discovery documents such as depositions . . . usually are accepted as 'other paper' sources that initiate a new thirty-day period of removability.") (footnotes omitted). *See also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996) (holding that a deposition transcript is an "other paper").
>
> For several reasons, we adopt the majority rule. The intent of the statute is to "mak[e] sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." [14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3732 at 306 (3d ed. 1998)]. Unquestionably, information elicited during a deposition may serve that purpose. For purposes of the removal statute, deposition testimony stands on equal footing with written forms of discovery, such as interrogatories and requests for information.

A defendant cannot forgo one recognized means of obtaining information related to jurisdiction for another and then argue that the manner in which the information was provided, which was in compliance with defendant's request, precludes imputing knowledge of the information to the defendant. Such manipulation would provide a windfall for the defendant which is clearly contravened by the removal statute's emphasis on effecting removal as soon as possible.

*Golden Apple Management Co. v. GEAC Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998) (citation omitted). We hold that deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an "other paper" under § 1446(b).

*Id.* Particularly relevant here, the *Huffman* court also found:

Because the applicable rule of civil procedure does not provide a deadline for obtaining a transcript of a deposition, *see* Fed. R. Civ. P. 30(b)(2), (f)(2), the date of receipt of a transcript may also be subject to manipulation. Accordingly, the removal period commences with the giving of the testimony, not the receipt of the transcript.

*Id.*

Thus, the Tenth Circuit held that Huffman's "deposition testimony triggered the thirty-day period of removability" and that the lessor's notice of removal was untimely. *Id.* at 1079. The appellate court ultimately concluded that, "[b]ecause the district court's decision must be reversed on the merits, and the district court's denial of the motion to remand [was] erroneous," the case was reversed and remanded to district court "with instructions to vacate the judgment and to remand the action to the district court for Tulsa County, Oklahoma." *Id.* at 1084.

### ii.     The Third, Ninth, and Sixth Circuits

Other courts have also found that removal must occur within thirty days of the date of the deposition.  In *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 (3d Cir. 2016), an asbestos case, the Third Circuit reversed the granting of a motion to remand and held that the defendant "established its entitlement to proceed in federal court." *Id.* at 808, 815.  In doing so, the

appellate court found that the plaintiff failed to adequately raise his timeliness argument, so it was forfeited. *Id.* at 815.

However, the appellate court noted that, "[e]ven were that issue preserved, it would not change our conclusion on the matter." *Id.* at 816 n. 10. The defendant claimed that removal was timely because it did not know about the basis for jurisdiction until the deposition of plaintiff's deceased spouse, who was allegedly exposed to asbestos. *Id.* Plaintiff "concede[d] that answers to deposition questions 'can constitute "other paper" for purposes of triggering the time for removal under 28 U.S.C. § 1446(b)[,]' " but argued that the defendant should have been able to determine the basis for jurisdiction from its own records. *Id.* (citation omitted). In rejecting this argument, the appellate court explained: "[s]etting aside the fact that nothing in the record supports the assertion that [defendant] could have made such a deduction, [defendant] simply was not required to do so." *Id.* (citations omitted). The Third Circuit then specifically concluded: "As a result, the relevant date for determining the timeliness of [defendant's] motion to remove was the September 5, 2013 deposition of [the plaintiff's spouse], and [defendant's] October 4, 2013 filing was therefore timely." *Id.*

In *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010), the plaintiff argued that removal was untimely under the Class Action Fairness Act, 28 U.S.C. § 1332(d), where "[t]he timeliness of removals . . . is governed by . . . § 1446(b)[.]" *Id.* at 884. The defendant credit reporting agencies argued that removal was timely because plaintiff's deposition testimony first provided an indication that the $5 million CAFA amount in controversy was satisfied and the case was removed "within thirty days of the deposition." *Id.* at 886. The appellate court initially stated that the plaintiff "did not contest that the deposition

revealed that her case satisfie[d] CAFA's amount-in-controversy requirement. Therefore, she has

waived any argument to the contrary." *Id.* The Ninth Circuit then explained:

> In any event, we agree with the district court that [plaintiff's] deposition testimony
> triggered the second thirty-day removal period. Like a response to interrogatories,
> *see* [*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006),] a
> plaintiff's response to deposition questions can constitute "other paper" within the
> meaning of section 1446(b), *see, e.g., Peters v. Lincoln Elec. Co.,* 285 F.3d 456,
> 466 (6th Cir. 2002) (collecting cases). In her deposition, when asked whether
> "$25,000 apiece" would be insufficient "to resolve the damages on behalf of the
> persons that are similarly situated," [plaintiff] answered, "That's correct." From this
> testimony, Equifax could reasonably determine for the first time that the amount in
> controversy was at least $25,000 per class member, or $12.5 million total.
>
> Because the notice of removal was filed within thirty days of [plaintiff's] deposition
> testimony, which was "other paper from which it may first be ascertained that the
> case is . . . removable," 28 U.S.C. § 1446(b), we conclude that the denial of
> [plaintiff's] motion to remand was proper.

*Id.* at 886–87.

In *Peters v. Lincoln Electric Co*., 285 F.3d 456 (6th Cir. 2002), the plaintiff appealed the

denial of a motion to remand, and the defendant contended that plaintiff's "deposition testimony

establishe[d] that he [was] asserting a claim under ERISA." *Id* at 465. In upholding the lower

court's decision, the Sixth Circuit stated:

> Although this Circuit has not squarely addressed the issue of whether a deposition
> may constitute an "other paper" for purposes of Section 1446(b), the majority of
> courts that have considered this issue have answered the question in the affirmative,
> holding that a plaintiff's answers to deposition questions can constitute an "other
> paper" for purposes of the removal statute. *See Huffman v. Saul Holdings Ltd.
> P'ship,* 194 F.3d 1072 (10th Cir. 1999); *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d
> 489, 494 (5th Cir. 1996); *Effinger v. Philip Morris, Inc.,* 984 F. Supp. 1043 (W.D.
> Ky. 1997); *Haber v. Chrysler Corp.,* 958 F. Supp. 321, 326 (E.D. Mich. 1997);
> *Riggs v. Cont'l Baking Co.,* 678 F. Supp. 236 (N.D. Cal. 1988); *Zawacki v. Penpac,
> Inc.,* 745 F. Supp. 1044, 1047 (M.D. Pa. 1990); *Fisher v. United Airlines, Inc.,* 218
> F. Supp. 223 (S.D.N.Y. 1963); *Fuqua v. Gulf, Colorado & Santa Fe Ry. Co.,* 206
> F. Supp. 814 (E.D. Okla. 1962); *Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.,*
> 189 F. Supp. 82 (N.D. Ill. 1960).
>
> This court agrees with, and now joins, the majority of courts and finds that a
> plaintiff's responses to deposition questioning may constitute an "other paper"

under Section 1446(b). The intent of § 1446(b) is to "make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d at 1077 (quoting Wright, Miller et al., Federal Practice and Procedure, § 3732 at 306 (3d ed. 1998)). Unquestionably, information elicited during a deposition may serve that purpose. *Id.*

As the Fifth Circuit explained in *Addo v. Globe Life and Accident Ins. Co.,* 230 F.3d 759 (5th Cir. 2000),

> Holding that a plaintiff's deposition testimony may be an "other paper" under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff is alleging a federal claim. Further, this holding discourages disingenuous pleading by plaintiffs in state court to avoid removal. *Id.* at 762.

*Id.* at 465–66. Finding "the Tenth and Fifth Circuits' reasoning persuasive[,]" the Sixth Circuit then expressly held "that if a defendant is able to ascertain for the first time from the plaintiff's deposition testimony that a case is removable, then a notice of removal is properly filed if it is filed within 30 days of that deposition." *Id.* at 466.

### iii.    Other District Court Cases

Other district court cases are in line with these circuit cases. *Haber v. Chrysler Corp.*, 958 F. Supp. 321 (E.D. Mich. 1997) is an excellent example.

In *Haber*, the district court rejected the defendant's argument that a deposition could not constitute "other paper." *Id.* at 326. *Haber* collected cases on the issue, concluded that it "agree[d] with the majority of courts", and found:

> [A] plaintiff's responses to deposition questioning is no different than a plaintiff's responses to written discovery requests, and it is well-settled that where a plaintiff makes a disclosure in discovery responses which reveals that a case is removable, the defendant has thirty days from that disclosure to remove. *See, e.g., Miller v. Stauffer Chemical Co.,* 527 F. Supp. 775 (D. Kan. 1981) (timeliness of removal determined from plaintiff's disclosure of federal jurisdiction in answers to interrogatories); *Smith v. International Harvester, Co.,* 621 F. Supp. 1005 (D. Nev. 1985); *Booty v. Shoney's Inc.,* 872 F. Supp. 1524 (E.D. La. 1995). *See also, Lee v. Altamil Corp.,* 457 F. Supp. 979 (D. Fla. 1978) (discovery documents revealing that

amount in controversy exceeded jurisdictional amount constituted "other papers" under § 1446(b)). Deposition responses are no less voluntary than written discovery responses.

This construction of "other paper" is consistent with the policy underlying § 1446(b) that a defendant who seeks to take advantage of the limited jurisdiction of the federal court do so as soon as he receives notice of removability. Thus, defendants are not permitted to "sit idly" while the statutory 30–day removal period runs and "squander both judicial resources and the resources of his adversary". *Kaneshiro v. North American Company for Life and Health Ins.*, 496 F. Supp. 452, 457 (D. Hawai'i 1980). . . .

For all of these reasons, the Court rejects Defendant's argument that Plaintiff's deposition cannot constitute "other paper" for purposes of triggering the 30–day time limit for removal under 28 U.S.C. § 1446(b).

*Id.* at 326.  In finding that removal was untimely, the district court concluded, "to the extent that this case is removable at all, for removal to have been timely, [defendant] would have had to have removed it within 30 days of Plaintiff's deposition[.]" *Id.* at 327.  Thus, *Haber* is an excellent example of the many cases [5] that are consistent with or relied upon by the above appellate decisions.

---

[5] *See Effinger v. Philip Morris, Inc*., 984 F. Supp. 1043, 1048 (W.D. Ky. 1997) ("In the present suit, Philip Morris could first ascertain that this action was removable on the date that Effinger's deposition was taken, February 12, 1997. Within thirty days of her deposition, Philip Morris filed the notice of removal. Because Effinger's deposition was an 'other paper' within the meaning of 28 U.S.C. § 1446(b), Philip Morris' notice of removal was timely filed."); *Mallard v. Prudential Ins. Co. of Am*., No. 95-908, 1996 WL 170126, at *2 (M.D. Ala. Mar. 29, 1996) (finding that notice of removal filed "exactly thirty days" after the depositions of some of the plaintiffs was timely and stating: "The purpose of Section 1446(b) is to allow defendants sufficient time to remove a case when it first become removable or when that defendant first receives notice of its removability. This purpose is well served by the line of cases which hold that depositions do constitute 'other paper.' Accordingly, the court holds that so long as the defendants are not charged with knowledge of removability prior to the deposition date, the deposition itself would qualify as an 'other paper' as set forth in the statute, and removal would have been timely."); *Riggs v. Cont'l Baking Co*., 678 F. Supp. 236, 238 (N.D. Cal. 1988) ("Defendants did not receive notice under Section 1446(b) of the facts indicating removablility until plaintiff was deposed on September 30, 1987. The deposition constituted an 'other paper' under the statute. Defendants removed the case on October 26, 1987. The petition for removal was timely filed, and plaintiff's motion to remand to state court on this basis is denied." (citation omitted)); *Fisher v. United Airlines, Inc*., 218 F. Supp. 223, 225 (S.D.N.Y. 1963) ("It has been held that an answer given by a party on a deposition is a 'paper' within the meaning of the removal statute. Defendants have thus made literal compliance with the statute, since they filed their petition for removal . . . within twenty days after the receipt by them of a paper establishing plaintiff's citizenship and thus the requisite diversity."); *Fuqua v. Gulf, C. & S. F. Ry. Co.*, 206 F. Supp. 814, 816 (E.D. Okla. 1962) ("The discovery deposition taken by the plaintiff was taken pursuant to the laws of Oklahoma authorizing the same and was such 'other paper' within the meaning of Section 1446(b) from which defendant first ascertained that the case was removable and defendant had 20 days thereafter to remove the case. . . .

### iv.    Analysis

The Court finds all of these cases highly persuasive. *Huffman* expressly recognized that "the removal period commences with the giving of the testimony, not the receipt of the transcript," and the case specifically held that a plaintiff's "deposition testimony triggered the thirty-day period of removability." *Huffman*, 195 F.3d at 1078–79. *Huffman* also recognized that "[a] majority of the federal district courts have not required receipt of an actual written document. Instead, they have held that a discovery deposition does satisfy the requirement." *Id.* at 1078 (citations omitted). Lastly, *Huffman* provided an excellent policy reason for beginning the 30-day period with the date of the giving of the testimony: the fact that "the date of receipt of a transcript may . . . be subject to manipulation." *Id.* The Court agrees with both the reasoning and the result of *Huffman*.

Further, though *Papp*, *Carvalho*, *Peters*, and *Haber* did not specifically address the issue in the context of transcripts versus live depositions, each of these cases expressly recognized that answers to deposition questions can constitute "other paper" under § 1442(b) so as to trigger the 30-day time period. *See Papp*, 842 F.3d at 816 n. 10 (Plaintiff "concedes that answers to deposition questions 'can constitute 'other paper' for purposes of triggering the time for removal under 28 U.S.C. § 1446(b).' "); *Carvalho*, 629 F.3d at 866–87 ("Like a response to

_____

The discovery deposition was a part of the State judicial process . . . and constituted such 'other paper' as referred to in the statute. Defendant railroad company therefore had 20 days from the taking of that deposition to remove the case to the Federal Court." (citations omitted)); *Gilardi v. Atchison, T. & S. F. Ry. Co.*, 189 F. Supp. 82, 84–85 (N.D. Ill. 1960) ("Plaintiff's discovery deposition taken pursuant to Illinois Supreme Court Rule 19, even though not required to be filed, was a sufficient 'other paper' within the meaning of Section 1446(b) from which defendant first ascertained that the cause was removable and defendant had twenty days after so learning to remove the case. . . . This holding is consistent with the policy and purpose of Congress to effect removals as early as possible and avoid unnecessary delay. The filing of such a deposition does not make the fact of diversity of citizenship ascertainable, but the revelation under oath and recording of such diversity does. To hold that the time for removal does not commence to run until such a paper as the deposition is filed in court would be to require an unnecessary action." (citations omitted)).

interrogatories, a plaintiff's response to deposition questions can constitute 'other paper' within the meaning of section 1446(b)" (citations omitted)); *Peters*, 285 F.3d at 465–66 (collecting cases and stating, "This court agrees with, and now joins, the majority of courts and finds that a plaintiff's responses to deposition questioning may constitute an 'other paper' under Section 1446(b)"); *Haber*, 958 F. Supp. at 326 ("[A] plaintiff's responses to deposition questioning is no different than a plaintiff's responses to written discovery requests, and it is well-settled that where a plaintiff makes a disclosure in discovery responses which reveals that a case is removable, the defendant has thirty days from that disclosure to remove[,]" and collecting cases on issue).

Moreover, in these cases, the Third, Sixth, and Ninth Circuits (and *Haber*) specifically stated that the 30-day time period began on the day of the deposition. *See Papp*, 842 F.3d at 816 n. 10 ("As a result, the relevant date for determining the timeliness of [defendant's] motion to remove was the September 5, 2013 deposition of [the plaintiff's spouse], and [defendant's] October 4, 2013 filing was therefore timely."); *Carvalho*, 629 F.3d at 886–87 ("Because the notice of removal was filed within thirty days of [plaintiff's] deposition testimony, which was 'other paper from which it may first be ascertained that the case is . . . removable,' 28 U.S.C. § 1446(b), we conclude that the denial of [plaintiff's] motion to remand was proper."); *Peters*, 285 F.3d at 466 ("if a defendant is able to ascertain for the first time from the plaintiff's deposition testimony that a case is removable, then a notice of removal is properly filed if it is filed within 30 days of that deposition."); *Haber*, 958 F. Supp. at 327 ("to the extent that this case is removable at all, for removal to have been timely, [defendant] would have had to have removed it within 30 days of Plaintiff's deposition"). All of this is strong support for the Plaintiff's position.

Lastly, the Court finds that its conclusion—that the 30-day period for removal commences to run from the date of the deposition rather than the day the deposition transcript is received—is consistent with the policies underlying § 1446, as expressed in the above decisions. *See Peters*, 285 F.3d at 465–66 ("Holding that a plaintiff's deposition testimony may be an 'other paper' under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff is alleging a federal claim." (quoting *Addo*, 230 F.3d at 762)); *Huffman*, 194 F.3d at 1078 ("The intent of the statute is to 'mak[e] sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists.' " (quoting 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3732 at 306 (3d ed. 1998)); *Haber*, 958 F. Supp. at 326 ("This construction of 'other paper' is consistent with the policy underlying § 1446(b) that a defendant who seeks to take advantage of the limited jurisdiction of the federal court do so as soon as he receives notice of removability. Thus, defendants are not permitted to 'sit idly' while the statutory 30–day removal period runs and 'squander both judicial resources and the resources of his adversary'. " (quoting *Kaneshiro*, 496 F. Supp. at 457)).

For all of these reasons, the Court finds that Avondale's notice of removal was untimely. Avondale was required to remove this suit within thirty days of the Plaintiff's deposition, and it failed to do so. As a result, the Court finds that Avondale failed to comply with § 1446(b), and the Court will remand this suit to state court.

### B.  Request for Attorneys' Fees and Costs

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  "The fact that an award of fees under § 1447(c) is left to the district court's discretion, with no heavy

congressional thumb on either side of the scales, does not mean that no legal standard governs

that discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 710, 163

L. Ed. 2d 547 (2005). "Absent unusual circumstances, courts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

removal." *Id.*, 546 U.S. at 141, 126 S. Ct. at 711. "Conversely, when an objectively reasonable

basis exists, fees should be denied." *Id.*

The Court finds that Avondale had an objectively reasonable basis for seeking removal.

Several district courts within the Fifth Circuit took the same interpretation of *S.W.S. Erectors* as

Avondale. Though this Court disagrees with their reading of *S.W.S. Erectors*, these cases (and

Avondale) were certainly reasonable in their analysis. And under that analysis, removal would

have been timely. Thus, the Court finds that, under its discretion, an award of costs and

expenses is not appropriate in this case.

**III.     Conclusion**

Accordingly,

**IT IS ORDERED** that the *Plaintiff's Motion to Remand and Request for Attorneys' Fees

and Costs* (Doc. 9) filed by Plaintiff Curtis Morgan is **GRANTED IN PART** and **DENIED IN

PART**. The motion is **GRANTED** in that this suit is remanded to the 18th Judicial District Court

for the Parish of Iberville, State of Louisiana. In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>June 21, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**